## SIMON WHITNEY *et ux. versus* SETH SPRAGUE.

Where a sale was made by a guardian, of the land of his ward, in 1810, upon the faith of a certificate by a clerk of the Court of Common Pleas, that a license had been granted therefor ; and it appeared, that the records and papers of that period were kept by the clerk in a very loose manner, that the purchaser had ever since had the undisturbed possession of the land, and that the ward, upon a settlement of the guardianship account in 1823, received the proceeds of the sale, it was *held*, that such certificate, corroborated by these and other slight circumstances, was sufficient to prove, that a license had been duly granted, although no record thereof was to be found, and there was no entry on the docket of that court in relation thereto.

THIS was a writ of entry to recover a tenement in Duxbury, the demandants counting on the seisin of the wife, Sarah Whitney, and a disseisin by the tenant.

At the trial, before *Morton* J., it was admitted, that John Holmes, the father of Sarah, died seised of the demanded premises, in 1807, and that upon his death they descended to her as his heir. It appeared, that in 1810, Joseph Prior, having been appointed guardian of Sarah, then a minor, applied for a license to sell the premises ; that he, subsequently, received a certificate, signed by the clerk of the Court of Common Pleas, setting forth, that at the term of that Court held in April 1810, an order was passed, empowering him to sell the real estate of his ward ; that Prior accordingly sold the premises to the tenant, on September 4th, 1810, for the sum of $ 900, and delivered to him a deed thereof, in which he covenanted, that he was duly licensed to sell the same ; that previously to the sale, he took the oath by law prescribed, gave bond, and gave public notice of the sale, according to law, and that he had, in other respects, conformed to the provisions of the law ; and that the tenant had, from the date of the deed to the present time, held undisturbed possession of the premises.

It further appeared, that on the 20th of January, 1823, Prior settled his guardianship account in the Probate Court, in which he was charged with the proceeds of such sale ; that such account was duly allowed by the judge of probate ; and that the demandant, Simon Whitney, received the balance.

It further appeared, that upon an examination of the records of the Court of Common Pleas and the original docket, no

record was to be found of any order granting a license to Prior to sell the demanded premises, and that there were no papers on file showing any application for such license, nor any minutes in relation thereto, although there were several licenses for the sale of real estate, among the records of that court for that term, and applications therefor, on the files; that no bond, given by Prior, was to be found among the files of the probate office, and that there was no record of any oath having been taken by Prior, previously to the sale, nor of his having advertised the sale.

It appeared that Sarah was married to the demandant, Simon Whitney, seventeen years ago, and that they had both lived in Duxbury ever since their marriage.

If the Court should be of opinion, that, upon these facts, it was competent for the jury to find a verdict for the tenant, the demandants were to become nonsuit; otherwise, the tenant was to be defaulted.

*Coffin*, for the demandants, cited Matthews on Presump. Evid. (Rand's ed.) 208, 209 ; *Hathaway* v. *Clark*, 5 Pick. 490 ; *Chase* v. *Hathaway*, 14 Mass. R. 227 ; *Ricard* v. *Williams*, 7 Wheaton, 109 ; *Hull* v. *Horner*, Cowp. 109 ; *Gray* v. *Gardner*, 3 Mass. R. 399.

*Oct. 26th.*

*P. Sprague, Eddy* and *Beal*, for the tenant, cited *Gray* v. *Gardner*, 3 Mass. R. 399 ; *Colman* v. *Anderson*, 10 Mass. R. 105 ; *Pejepscut Proprietors* v. *Ransom*, 14 Mass. R. 145 ; *Blossom* v. *Cannon*, 14 Mass. R. 177 ; *Clark* v. *Faunce*, 4 Pick. 245 ; *Melvin* v. *Propr. of Locks and Canals on Merrimack River*, 16 Pick. 137 ; *Alvord* v. *Collin*, 20 Pick. 418 ; *Bolivar Manuf. Co.* v. *Neponset Manuf. Co.* 16 Pick. 241 ; *Battles* v. *Holley*, 6 Greenleaf, 145 ; *Ricard* v. *Williams*, 7 Wheaton, 59 ; *Eldridge* v. *Knott*, Cowp. 214 ; *Bealey* v. *Shaw*, 6 East, 214 ; *Wilkinson* v. *Payne*, 4 T. R. 468 ; 2 Wms. Saund. 42a, note ; *Hull* v. *Horner*, Cowp. 102 ; *Hillary* v. *Waller*, 12 Ves. 252 ; *Doe* v. *Hilder*, 2 Barn. & Ald. 782 ; *Commonwealth* v. *Bolkom*, 3 Pick. 282 ; *Goff* v. *Fowler*, 3 Pick. 300.

SHAW C. J. afterward drew up the opinion of the Court. This action depends upon the same principles, with that of *Pruden* v. *Alden, ante*, 184. The only difference is, that in this

case, the docket of the term at which the license is alleged to have been granted, is not missing; but in the present case a certificate under the hand of the clerk, issued at the time, and acted upon at the sale, is produced.

The certificate of license, signed by the clerk, and now produced, though strong evidence of the fact of adjudication and grant of a license, is not the regular and proper evidence of such grant, in the first instance ; as an execution is not the regular evidence of a judgment. But upon proof or presumption of the loss of the record of a judgment, such execution would be strong *primâ facie* secondary evidence; because the one recites the other, and both emanate from the same authority.

As evidence of the loss, there is proof of the loose manner, in which the records of that period, and the memoranda, from which records were intended to be made up, were preserved. The long and uninterrupted possession and undisputed title to the estate, which could only have been good under a valid license and a confirmation of the title by the demandants, by taking the proceeds, are facts leading to the same conclusion. Whether such an acceptance of the proceeds, would amount to an estoppel *in pais*, technically, we do not decide ; it is however evidence tending to show the acquiescence of the demandants in a title which presupposes such license. This settlement was made seventeen years ago, by those who had the best means of knowing whether there was such a license, and the strongest interest to contest it.

We are to take notice that petitions for licenses were not entered at the beginning of the term, and placed upon the docket in the ordinary course of common law actions, but were granted upon petition, commonly without opposition, which petitions were usually presented at some leisure moment towards the end of the term. Supposing such a petition were read and granted and handed to the clerk, and he minuted the allowance on the petition, and laid it aside to enter it on his docket, and make up his record afterwards, we are strongly inclined to the opinion, that it would have been a good authority from which an extended record could be made up, by the proper officer, and until a fuller record could be made up, it

would stand as good evidence of the act of the court granting such license. Many other circumstances concur to prove the fact of such a license being granted, and the existence and loss of the record of it, from which it would be competent for a jury to find the truth of the case; and the opinion of the Court, therefore, is, that the guardian's deed was valid and passed a good title to the tenant.